Next case for argument is 151448 Site Update Solutions v. CBS Corp. Mr. Tchaikovsky Yes, thank you. May it please the court, Yahr Tchaikovsky, Paul Hastings on behalf of Appellant Newegg. Your Honors, we stand before you for the second time here post-Octane. Where the Supreme Court in Octane changed the 285 standard to be a less rigid... I think we understand that. Why is the claim construction frivolous here? Why is the claim construction frivolous? Yeah. Well, the court found that the constructions in the Eastern District of Texas were frivolous. And then, as we moved from Northern District of California in this case, the court found that the constructions were not entirely frivolous, or not entirely objectively unreasonable. And so, given the lower standard, as OPLUS Technologies has stated, the considerably lower standard that we have in Octane, that the court here used the exact same language from the first opinion from Brooks Furniture, and used that language and repeated it again. And what we have in Octane is this less rigid... I don't think it's a question. I don't think the district court applied the wrong standard here. The question is whether applying the right standard, he reached the wrong result. And that depends on whether his determination that the claim construction position in California was not frivolous was correct or incorrect. So, Your Honor, let me answer that in two parts, if I may. Two, I would say under the high mark where there can be an error of law, and then there's the clear error of the application of the facts or evidence. The error of law here is the standard that was applied here in the Northern District of California to those constructions was not entirely frivolous. The language I have is not entirely unreasonable or frivolous, not completely without support, not entirely frivolous or objectively unreasonable. That was entirely, completely, that's a zero-tolerance standard. That's looking for... I want to address the question I'm asking about. Was the claim construction frivolous or not? And the answer is yes. As we've pointed out in our brief, the constructions, plural, were frivolous in and of themselves. As Octane points out with respect to its standard and the lack of substantive strength of the position, we have a situation here where there was no support for the legal position of a special-purpose computer with no algorithm. In fact, each one of those positions was shot down by the district court as a legal position. So we have the absence of legal support. Well, we're only here because they lost. I mean, that's a given in all of these cases where attorney's fees, clearly the party has lost. And the district court clearly saw some distinction between what they offered up in Texas and what they offered up here. He found that distinction to not be relevant in terms of a finding of a violation, but he says they added some more stuff, right? He understood. And as I read his opinion, he said, you know, there's this Inmate Katz case, and there was some ambiguity as to how broadly it has to be construed. So I can see where there might have been some confusion in the law, and therefore this isn't sufficient. Why was the district court wrong? Why did he abuse his discretion? Right. And again, the district court was, as we've stated, the district court in our papers, the district court was wrong because we have a situation where we never had any support for this special purpose computer, no algorithm position. We got to the reply brief in California after almost two and a half years of litigation. Goss was cited, searched for, and located in Northern District of Illinois opinion that doesn't support the position. In fact, the district court confirmed it doesn't support the position that was propounded by the plaintiff. And then there was a Katz remand from the Central District of California opinion that somehow was a burden-shifting position to the plaintiff, to the defendants, excuse me, with respect to we have the duty to provide evidence that this is not a general purpose computer. There was an obfuscation of whether we're asking for a special purpose computer or a general purpose computer, and that's exactly what the plaintiff was doing before dismissal. It seems to me that the issue here is that there is a special purpose computer, but that without additional software, it doesn't perform the functions that are described here. And that's basically, as I understand it, your position. In other words, that there's a special purpose computer because the GCI software is part of that, and maybe other things in it, but that that alone is not sufficient to perform the functions. Isn't that your position? So, Your Honor, respectfully, that's not our position. It's not? No. In fact, our position would be at best we have general purpose computer components, whether it's a CGI script, a website database, a form. Those are general purpose computers. They don't do anything special. And then there is no algorithm. And as this Court has made clear, quite frankly, in the EON versus AT&T mobility case, there's really two ways to look at it. Yeah, we're familiar with EON. Didn't EON come after this, though? EON did come after this. So, I mean, the Court felt the need in EON to clarify a lot of what had been going on in the case. Why can't we look at that and say, look, this preceded EON. There was, I won't say confusion, that might be too strong, but there was some give and take in the case. It's clear they lose, they were wrong, but it's not sufficient to make it frivolous or unreasonable. And I would suggest that EON is a great statement, an overarching statement of what the law was. As we've provided our brief, the law from aristocrat blackboard on forward, I don't think there was any lack of clarity in what the law was. We had a CATS exception, and if you didn't meet the CATS exception, you needed an algorithm to be a special purpose computer, whether in prose or in steps. It doesn't have to be source code. No one's suggesting that. But that's what you needed in this situation. And we presented that to plaintiffs throughout this process. And there was no effort made. Yes, there was additional computer structures, general structures added. But those general structures were not special structures. And then we had a reach for GOSS and CATS, which don't support the position. And, in fact... I don't think this depends on an interpretation of the cases. I think it depends on interpretation of the claims and specification here and the determination of whether the construction for which they were arguing was frivolous in the light of the facts of this case. And you may want to argue this as, you know, depending on case authority and things like that, which is fine, but you're not, in my mind, addressing the heart of the issue when you do that. And focusing on the heart of the issue, which is the aggregate of defects, which you can see on page 45 of our brief, which are the factual defects in the claim. We have a demonstrative in there that shows all of the defects in one claim with eight means-plus-function elements that was asserted by an experienced patent litigant, Acacia, which should be a factor under Octane, and an experienced patent litigation counsel, the Goldstein-Lipski firm, who had actually been before this court on means-plus-function elements and actually found to be indefinite, you know, vis-a-vis aristocrat in 2010 in the Brown case. And they should have known the law. So all of these factors that you set out in your brief, I mean, the court was well aware of those, and the court had to endure the arguments, and probably part of the frustration that you cite in your brief, but yet the court decided that this was not enough. What is it that, why is that an abuse of discretion? I mean, Octane works both ways, doesn't it? It gives us, it creates deference to the district court, both in establishing attorney's fees and also in denying attorney's fees. I agree with you, Your Honor, and that's why I do think what's ultimately important is this aggregation of defects. However, what is also important with respect to that abuse of discretion, as you go through the opinion of the district court judge, is applying the standard throughout, which is effectively the objectively baseless standard that was thrown out by the Supreme Court in Octane, and in fact perhaps heightened in the sense of not entirely, or not without foundation, or not completely, looking for the absence of any support. That's not, the test in Octane was a position that simply stands out from others with respect to the substantive strength of a party's litigation position, given the governing law and facts of the case. Instead, what we see throughout this opinion, from the summary on page 13, A13, to the conclusion by this court on A32, is that we have language saying not entirely, so we were frivolous in Texas. Can we understand what the district court there was also saying? The district court here has experience in patent cases, and the judge here has quite a bit of experience in patent cases. Maybe he gets other cases that also have blunders, and are based on a long legal theory. This does not stand out as totally exceptional, in his experience, in the court's experience. Again, I would suggest to your honors that with a case with one patent, one claim, eight means plus function elements, we're not talking about the multiple claims we just heard from the prior panel, that a case where a judge says positions are frivolous, highly problematic, they strain credibility, they're difficult to make logical sense of, they didn't follow the law, in fact, there was no support for their position, shot down, in fact, TechSec, which was brought up the first time when we were here on appeal, this court on remand shot down TechSec as support. That can't meet the considerably lower octane standard. If this doesn't meet the considerably lower octane standard, I'm not sure what does meet the standard, even under the abuse of discretion standard, when we're looking for an error of law, or a clear error of the application of the evidence. You went to your rebuttal. Let me see what's on your file. May it please the court, John Edmonds, for the appellee site update solutions. Let me tell you what the problem is, okay? I read the specification here, I see the functions described in the claims, and I have a very hard time finding any structure here that even arguably performs the functions, and what the specification does, it talks about the GCI software and so on and so forth, but obviously specialized software is needed to perform these functions, and the specification says that. If you look at column 3, line 63, by augmenting or replacing existing agents and manual registration methods with specialized tools on the local website, and then it talks about these software tools again and again and again, but it never says what the software tools are. It never sets forth an algorithm, either mathematically or in prose, and it just totally leaves it up in the air, and the problem is, it seems to me, even under the case law, as it existed as of the time that this suit was filed, it was clear that you needed some structure to perform the functions, and I don't think that referring to that structure as specialized software or software tools satisfies that requirement. So that's the problem I'm having, so help me with it. All right, well, first of all, we didn't appeal the claim construction. As far as the indefiniteness goes, there is no... But you didn't appeal it, but the question here is the district court said it's not wholly unreasonable, and if we agree with the district court that it's not wholly unreasonable, probably Highmark tells us that we should affirm it. So the question is, is this frivolous? Is it wholly unreasonable? I'm suggesting to you that the description of the structure here is so vague and indefinite that it can't possibly, potentially, satisfy the requirements of having some structure in the claims that would perform the functions, because it just refers to it as software tools or specialized software. That's the problem. As Site Update read this, and I would refer the court to the declaration of our expert, Dr. Levien, which was submitted along with the claim construction, our understanding of this technology, his understanding of technology in the context of the patent was that these tools that he's talking about are the CGI script and the form, which would be a robot's text file, and the database, and those are what augment the server. So we had a... What ultimately this was was a factual dispute where there were experts on both sides. One was saying that this structure performs a function, this structure is linked to the function. Another expert who said this structure doesn't perform, it isn't linked, and ultimately, and it's reflected in the court's opinion, the court credited their experts... The GCI program and these other things can't perform the functions that are described in the claim. It needs additional software, no? That was the holding of the court. What I'm saying is that Site Update was reasonable in that our expert, and I think whose qualifications were not challenged, whose opinions were not challenged under Darbair, gave clear opinions that this software was sufficient. Where does he say that? Could you show me? Sure. His declaration is at 1590 through 1619 of the appendix. So, I mean, it's... The thing is, it's lengthy. He has a lengthy, detailed analysis, and he talks about what... Where do I look here for him to... Where he says that that structure, the GCI programs, et cetera, were sufficient. Okay. I would look at the analysis of means for enabling or disabling, which is at 1607. 1607? Yeah. Okay. What paragraph? All right. Here. You know, let me do this, because I don't have that index as well as I have the specification. What I would refer you to is we cite it in our brief, which I think is probably a better place to look, because it's quoting from his declaration. It's also quoting from the patent, and I have it right here in front of me. So, for example, at column six, lines 48 through 49, it says that the installation of these tools places... Hold on. Yes, sir. 48 to 49. Okay. What page are we looking at, counsel? 153. So the tools place the CGI scripts, database tables, and HTML forms on the server. It then says that each element, I think we say referring to those, performs a specific function. Yeah, but I don't see that saying that the only software tools are the CGI scripts, database tables, and HTML forms. If you read... I mean, it's a detailed specification, but when it's talking about each element performs a specific function, it's talking about those specific things that precede it, and I think that's even made more clear in column seven, lines 18 through 22. It says the user's provided with an HTML form and a CGI script, here and after referred to a CGI program, in order to configure the enabled and table of fields files. That's where you get into configuration. So, you know, there are other references here in our brief, and I can't quote them out of memory, but there are numerous places in the spec that Dr. Levien relied on in terms of saying that the user uses the scripts, the tables, or the database and the forms to perform these specific functions. The opening function, or the creating function, the identifying function, the transmitting function is different. That's the web server and the CGI program itself. But, you know, that's where we had a difference, because the specification teaches that these things that Newegg contends are general. The specification teaches that they perform specific functions, and that was fundamentally Dr. Levien's position that one of ordinary skill in the art would also understand, just like the specification teaches, that this software, when installed on a server, performs certain functions, and that's where we saw the special purpose computer. Now, the court has disagreed with that. The court said that additional disclosure is necessary, and on means for creating, the court, instead of referring to the CGI script, the database, and the form, the court referred to a disclosed server algorithm. But if you read the spec, the disclosed server algorithm performs the same functions that we were talking about in terms of what we were calling a CGI script, a database, and a form. So, you know, it's not just something where, there was a difference in views, a reasoned difference in views that was based on the specification and based upon a reasoned expert's opinion as to whether this software is sufficient to perform these functions. Yes, they're mentioned in the prior art, yes. Yes, so this is saying we're coming up with some new software that would enable you to perform the functions that are described here. Well, the claim has to be read as a whole. The CGI program is not the point of novelty. And what this patent is primarily directed to is the local performance of these functions. It says, for example, in column four, the process is begun by distributing a set of search engine update software tools to the website owner. Those software tools are new kinds of software, right, that enable the functions here to be performed. I think the fact that this is being done... True or not? No, it's not. I may misunderstand your question, but what I'm trying to say is that what it's saying is that these are now local functions that are being performed on the server. So it's taking the burden off of the crawler. It's allowing all kinds of benefits for the website owner. So a CGI script was not new, but its use in this method, in the apparatus here with the claim, that is new. So I'm not saying that there was not... robots.txt didn't exist before. I'm not saying there were not CGI scripts before, but their use in this fashion is what is new. Maybe their use in this fashion is new, but in order to be used in this fashion, you need new software, which is repeatedly referred to here, but not described in any way that's specific or provides an algorithm. I don't know if the district court held that. I mean, the district court said that... It's not a question of what the district court held. It's a question of whether the district court's finding of non-frivolity is sustainable. Well, I think the district court's finding of non-frivolity... You know, in each instance where the district court criticized and they quoted the district court, in each instance the district court provided further detailed analysis as to why there was a basis for each of the positions that SiteUpdate took. So it talked about that there was a dispute and the district court said that SiteUpdate misunderstood the level of detail. Well, that was a dispute over whether the details were there. And that's the thing. We have a different understanding as to whether this software performs these functions without any additional teaching. And the court held that it required additional teaching, which it added certain steps in an algorithm, and we respect that, but our view was certainly reasonable and it was based upon a reasonable view of the patent, based upon what the patent says that these functions perform. So that's... You know, I don't think in every case one side is wrong. And in almost every claim construction battle one side is wrong, and that's not the touchstone. I think what the court should focus on is that, you know, in the TxEC case we cited and the court said, well, they don't have enough detailed pros to fall under TxEC. Well, we've accepted that, but there's a reasonable factual dispute over whether there were sufficient detailed pros in the specification to fall under TxEC to where identifying the software itself as opposed to some type of steps in an algorithm would be sufficient. It was a reasonable dispute. It was a position to where the plaintiff fell short, but a position that wasn't without support in the specification. I'd also point out on the indefiniteness, you know, Newegg's first claim construction briefing in Texas did not claim that these elements were indefinite. So they're saying that, well, you plaintiff have acted frivolously because you didn't realize your claim elements were indefinite when they didn't either. And it's their job as a defendant to point those kinds of things out. So if the defendant doesn't initially point it out, I think it's more difficult to say that the plaintiff should be faulted for not... What led you then in California to change your construction? And add number two. In Texas, the claim constructions, I think, were inartful. I think if you read them as a whole, I think they were trying to argue. The arguments were making the day, but it was not well written. And in Texas, there was not... So there was a markman brief. There was a response. The response pointed out deficiencies in the plaintiff's constructions. The case was transferred before a reply came due. So the plaintiff had no ability to correct those. When it went to California, there was essentially a reset. And the plaintiff said, we're correcting these issues. We're coming forth with more structure in our constructions. So my colleague said that there was a finding that those claim constructions were frivolous. That's not correct. That's not what the district court said. He said, I would have likely found them frivolous had they not changed if he did not say they were frivolous. But I'd also point out, look at Newegg's alternative constructions for these claim elements that it claims that our position was frivolous. Its alternative constructions are not that far from our constructions. They have a web server, a CGI script. We're not saying they're frivolous. The parties have positions. Parties have reasonable positions. They could be supported by experts. Do their constructions include additional software beyond the CGI and the robots, whatever? Newegg's alternative construction for means for transmitting is a website server. That's it. It's on appendix A. The court, in its opinion, goes through the parties' proposed constructions. Newegg's proposed construction for means for parsing the alternative construction, if it wasn't found indefinite, was a website server which parses a CGI script. Not very far from the constructions that SiteUpdate was proposing in this case. These were proposed if it wasn't indefinite. If it wasn't. But again, for them to say they're not admitting that their constructions are frivolous, the same thing would apply for means for updating. They're not admitting their constructions are frivolous, yet their alternative constructions are very similar to what ours were and are based upon the same concept that the CGI script would be sufficient programming to where you don't need additional algorithmic disclosure. Again, I don't think they can have it both ways to say that they've taken all these positions and now, just because we've lost, we should be held under a higher standard. This patent was... These claims have been allowed twice. It was allowed once by the patent officer issued. They were reissued. And the examiner had no problem with finding structure in the specification for these elements. I think that adds to the reasonableness of this. But I think fundamentally... And NEWEG has not alleged clear error. So we're just looking at whether the district court abuses discretion. And that's a very high standard. I think this district court is very experienced. This district court in Northern California is very no-nonsense. And the district court did a... has done a detailed analysis twice. And the district court heard every argument that NEWEG made. The hearing on this lasted, I think, two hours. They finally had to just kind of send everybody home because the court was closing. And the district court has heard all of this and has decided in its judgment that this is not an exceptional case. It stands out from the other. That, as the court said, octane goes both ways. And the district court has... There's been no error here. The district court's decision should be... should be affirmed. Its discretion should be upheld. Thank you. Thank you, Your Honor. C.R. Tchaikovsky again for Appellant Newick. With regard to indefiniteness, we can look at A994. We did assert in East Texas that the terms were indefinite. So that's actually not correct statement that we took the position the terms were indefinite. And, in fact, with respect to those terms that were identified, as Your Honor pointed out, that for the means for transmitting and the means for parsing, we argued those terms were indefinite. We provided an alternative construction given the burden on indefiniteness. But we said that does not meet the test. That is not sufficient. It's a generic structure. And it does not meet the test because the algorithm is not there. The fact that the patent had been reissued is, in some sense, of no consequence. It was issued in 1999 in a pre-WMS gaming situation. And it reissued in 2009 as Blackboard and Aristocrat came to be. And we didn't even have the PTO's examination guidelines with respect to the means plus function come in after the reissue issued. With respect to what Your Honor focused on, on the CGI scripts, that's the exact problem. These are generic software components that the district court said it would likely be found frivolous if they maintained just that position. Because six out of the eight terms, all they did until we got to California, is say, hey, CGI scripts, software, without providing more, even though the specification has a lot more detail and a lot more information in it. And just adding later, website database, a website server, which could be my home computer sending information back and forth, tells me nothing. That can't be a routine patent case. We take on the expert, and the expert, Dr. Lavian. This is a red herring with respect to whether we had to dalbert the expert. We weren't going to a jury trial here and trying to exclude evidence before our jury. This would be our fact finder. And quite frankly, we filed a surreply after they filed the opposition of the expert. In their reply, they filed an opposition, or they filed the expert declaration. And we filed a surreply pointing out the defects in this expert's opinion. And this happened just two weeks before the Markman hearing. We had a tech tutorial coming. We had the Markman hearing coming. So we did what we could and point out in a surreply the defects. And those defects are significant. Counsel spoke about the means for enabling, which I'll note, is not in his briefs before this court. And the defects in the expert report is that the law that the expert relied on in his report was the law provided to him by counsel, which is the law that the district court has found actually had no support for their opinion. We see that in the expert's declaration. And in that long, lengthy declaration, if we look at the means for enabling, there's no linkage, no linkage conducted in that expert's declaration. In fact, I opened up what counsel's pointing to, and you asked about the expert's declaration in A1610. At the end, paragraph 79, he just, a throwaway sentence, after citing many paragraphs of the specification, which paragraphs they could have included as arguing their algorithms with respect to these elements, but they didn't, both in Texas and in California. And just the expert says, oh, somehow this is somehow linked without telling us how it's linked. So there's an absence of linkage, both by the party and the expert. And that's why you don't see the expert's opinion cited once by the district court in either opinion. Brooks Furniture or Octane. The Levian Declaration is cited in neither. In fact, just as your honors concurrence and Raylon pointed out, when we see someone advocate this uninformative declaration, that is some evidence of bad faith. And that's what we're seeing here, is this constant refraining of this expert declaration somehow saving them, and it doesn't save them here. I think your time is concluded. Thank you. Thank you, your honors.